NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Matter of the Necessity for the Hospitalization of | ) ) ) | Supreme Court No. S-16837 |
| BREE H. | ) ) ) ) ) ) ) ) ) | Superior Court No. 4FA-17-00435 PR <br><br> MEMORANDUM OPINION AND JUDGMENT<sup>*</sup> <br><br> No. 1766 – May 20, 2020 |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: Callie Patton Kim, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Bree H. Anna Jay, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for State of Alaska.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

## I.  INTRODUCTION

A woman appeals the superior court's order involuntarily committing her for 30 days for psychiatric treatment. She argues that the superior court erred by finding clear and convincing evidence that she was likely to cause harm to herself. The State declines to defend the superior court's order. Because we have recently decided that we

---

\*    Entered under Alaska Appellate Rule 214.

will review involuntary commitment orders based upon the public interest exception to the mootness doctrine,[1] we independently determine if clear and convincing evidence exists despite the State's concession of error. Based on that independent review we vacate the commitment order because it was error to find that clear and convincing evidence existed that the woman was likely to harm herself.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Bree H.[2] went to the emergency room at Fairbanks Memorial Hospital (FMH) seeking treatment and medication for sexually transmitted diseases. After interviewing Bree an emergency department doctor filed a petition to hospitalize her for evaluation.[3] The doctor noted that she had a history of schizoaffective disorder and had presented to the emergency room in psychosis. The petition stated that Bree reported hallucinations commanding her to harm herself and noted her "pressured speech" and delusions involving sexually transmitted diseases, sexual abuse, and a ghost. The superior court granted the petition and ordered Bree hospitalized for an evaluation period not to exceed 72 hours.[4]

The day after Bree's arrival an FMH psychiatrist filed a petition for 30-day

---

[1]    *In re Hospitalization of Naomi B.*, 435 P.3d 918, 929 (Alaska 2019) (holding appeals from involuntary commitment orders are categorically subject to public interest exception).

[2]    We use a pseudonym to protect the respondent's privacy.

[3]    *See* AS 47.30.700 (detailing procedures for involuntary hospitalization for evaluation).

[4]    *Id.*

commitment for involuntary treatment.[5] The commitment petition alleged that Bree was mentally ill and as a result was likely to cause harm to herself. The petition stated that her delusions were "causing physical harm to herself and others."

### B.     Proceedings

After the court scheduled a hearing the State moved to hold the hearing at FMH, attaching a letter from the psychiatrist in support.[6] Over Bree's objection the hearing was held at FMH two days after she was hospitalized for evaluation. The psychiatrist was qualified as an expert without objection and testified that she had evaluated Bree upon her arrival at FMH, reviewed Bree's records from past hospitalizations, and observed Bree's behavior since she had arrived for evaluation. She testified that Bree's records documented that she had been diagnosed with schizoaffective disorder; the psychiatrist explained that the disorder interferes with individuals' ability to control themselves, leading to behavioral issues and often hallucinations, and that Bree had been experiencing most of these symptoms.

The psychiatrist testified that Bree was likely to cause harm to herself because of the disorder. She believed that Bree would be a danger to herself even though she had not made any suicidal or homicidal statements because she lacked a "clear interpretation of reality," and attempted to protect herself from people she thought were sexually abusing her by yelling at them and having "outbursts." The psychiatrist believed that Bree would therefore be vulnerable in the community, as others might not tolerate her behavior as they did in the hospital. However she acknowledged that Bree was "usually re-directable" when these outbursts occurred and that restraints had not

---

[5]     *See* AS 47.30.730 (detailing requirements for 30-day commitment petition).

[6]     *See* AS 47.30.735(b) (detailing procedures for 30-day commitment hearing).

been necessary to control her. In addition, the psychiatrist testified that Bree was at risk of harming herself because her delusions were causing her to have trouble eating. But she acknowledged that Bree had eaten "about 75 percent of [her] meals."

The psychiatrist testified that there was no less restrictive alternative than involuntary commitment to ensure Bree's safety. She hoped that remaining at FMH would provide Bree with safety and stability and that medication could be provided to improve her prognosis.[7]

Bree testified after the psychiatrist. She explained why she had gone to the emergency room and how she believed she had contracted the infections for which she sought treatment. She also testified that she had a place to stay with rent paid through the end of the month and that she received social security benefits. She stated that she was not using drugs or alcohol, and that she had been seeing a psychiatrist through Tanana Chiefs Conference. When asked if she had been on medication before, she responded "[y]es" and "[w]ay too much."

In response to the psychiatrist's testimony regarding her eating habits, Bree claimed that she had been eating everything on her tray, as well as food from other people's trays. And she stated that she had been eating well before she went to FMH. Bree admitted that she had outbursts and "thr[ew] tantrums," but explained that she had not hit nor wanted to hit anybody. She testified that she did not believe that she would be harmed or manipulated by others because she had "sight through the BS."

The court found clear and convincing evidence that Bree was mentally ill based on her schizoaffective disorder diagnosis, her "audio, visual, and tactile

---

[7]     FMH also filed a petition for the involuntary administration of psychotropic medication. *See* AS 47.30.839 (detailing involuntary administration of medication procedures). The petition was granted following the commitment hearing. Bree does not appeal this order.

hallucinations," and her behavior. The court then found it likely that she would cause harm to herself. The court found that her behaviors and delusions were "likely to cause her to be unsafe in a public setting" and "jeopardize her ability to properly feed herself" and maintain her social security benefits. After finding that there was no viable less restrictive alternative, the court ordered Bree committed to FMH for 30 days.

## III. STANDARD OF REVIEW

"Factual findings in involuntary commitment . . . proceedings are reviewed for clear error."[8] "[W]e reverse those findings only if we have a 'definite and firm conviction that a mistake has been made.' "[9] " '[W]hether factual findings comport with the requirements of AS 47.30,' is a question of law that we review de novo."[10] "[W]e will review de novo the superior court's decisions and use our independent judgment to determine whether, based on the underlying factual findings made by the superior court there was clear and convincing evidence that involuntary [commitment] was in [respondent's] best interests and was the least intrusive available treatment."[11]

## IV. DISCUSSION

Upon receipt of a petition for involuntary commitment of an individual for

---

[8]     *In re Hospitalization of Luciano G.*, 450 P.3d 1258, 1262 (Alaska 2019) (alteration in original) (quoting *In re Hospitalization of Jacob S.*, 384 P.3d 758, 763-64) (Alaska 2016)).

[9]     *Id.* (quoting *In re Jacob S.*, 384 P.3d at 763-64).

[10]    *Id.* (alteration in original) (quoting *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 375 (Alaska 2007).

[11]    *Id.* (alterations in original) (quoting *In re Hospitalization of Lucy G.*, 448 P.3d 868, 878 (Alaska 2019).

mental health treatment, the court must hold a hearing.[12] At the hearing's conclusion the court may order the respondent committed to a treatment facility for up to 30 days "if it finds, by clear and convincing evidence, that the respondent is mentally ill and as a result is likely to cause harm to the respondent or others."[13] Respondents are "likely to cause harm" to themselves if they exhibit "behavior causing, attempting, or threatening that harm."[14] The finding of danger to self "is concerned with active forms of harm, where the respondent has demonstrated the affirmative ability or inclination to inflict harm to self."[15]

Bree argues that the superior court's finding that she was likely to cause harm to herself was not supported by the record. She first contends that the court's findings about her ability to properly feed herself and maintain her social security and other benefits do not demonstrate an active form of harm. She argues that these findings concern her ability to provide for basic needs — a "gravely disabled" analysis — rather than the possibility of harm to herself.

She next argues that the court's findings that her "aggressive tantrums" and hallucinations created a risk that she would harm herself were not supported by any evidence that she was ever physically aggressive, and further that the FMH psychiatrist testified that during Bree's outbursts she was "usually re-directable."

---

[12] AS 47.30.735(a).

[13] AS 47.30.735(c).

[14] AS 47.30.915(12)(A). Although the language of AS 47.30.915 defining "likely to cause serious harm" is not identical to the language of AS 47.30.735 establishing the commitment standard of "likely to cause harm to [self] or others" we have applied this definition in the commitment context. *See E.P. v. Alaska Psychiatric Inst.*, 205 P.3d 1101, 1110 (Alaska 2009); *In re Luciano G.*, 450 P.3d at 1263 & n.13.

[15] *In re Luciano G.*, 450 P.3d at 1263 (quoting *Wetherhorn*, 156 P.3d at 376).

Although conceding that the tantrums were evidence of mental illness, Bree argues this evidence does not support a finding that she posed a substantial risk of bodily harm to herself or that she was inclined to harm herself because of her mental illness. Bree finally argues that the only risk of danger shown by the psychiatrist's testimony was the risk that she would provoke others to harm or take advantage of her. She argues that because the evidence is not sufficient to demonstrate her "affirmative ability or inclination to inflict harm to [her]self,"[16] the commitment order should be vacated.

The State concedes that the record does not support a finding of clear and convincing evidence that Bree's mental illness created a substantial risk of bodily harm to herself. Nevertheless, under the public interest exception to the mootness doctrine, we independently review the record to determine if there is clear and convincing evidence supporting the order.[17] The record before us does not contain evidence sufficient to support a finding of clear and convincing evidence that Bree had an affirmative ability or an inclination to inflict harm to herself.

## V.   CONCLUSION

Because it was error to find by clear and convincing evidence that Bree was likely to cause harm to herself or others, we REVERSE the decision of the superior court granting the 30-day commitment order and VACATE the order of commitment.

---

[16]    *See Wetherhorn*, 156 P.3d at 376.

[17]    *See In re Hospitalization of Naomi B.*, 435 P.3d 918, 929 (Alaska 2019); *Marks v. State*, 496 P.2d 66, 67-68 (Alaska 1972) ("Although a confession of error by the [State] is entitled to great weight, it does not relieve this court of the obligation to perform our judicial function.").